UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHNNY HERRINGTON,

    Plaintiff,

       v.                                                                 No. 3:18-cv-0315(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Johnny Herrington's, application for Title XVI supplemental security income benefits ("SSI"). It is brought pursuant to 42 U.S.C. § 405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding his case for a rehearing. [Doc. # 23]. The Commissioner, in turn, has moved for an order affirming her decision. [Doc. # 26]. After careful consideration of

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

the arguments raised by Plaintiff, and thorough review of the administrative record, the Court affirms the Commissioner's decision.

## LEGAL STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258. If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## BACKGROUND

1. **Facts**

Plaintiff filed his SSI application on December 13, 2012, alleging his disability began on that date. His claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On February 4, 2014, a hearing was held before an administrative law judge. On February 26, 2014, a decision was issued denying Plaintiff's claim. Plaintiff then sought review with the Appeals Council. The Appeals Council granted Plaintiff's request for review on July 28, 2015 and remanded the matter for a subsequent hearing. Specifically, the remand order directed the administrative law judge to do following: (1) give further consideration to Plaintiff's maximum residual functional capacity during the entire period at issue and provide rationale with specific reference to evidence of record in support of the assessed limitations; and (2) obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base and to determine whether he has acquired any skills that are transferable to other occupations. (R. 180-81). Administrative Law Judge Deirdre R. Horton (the "ALJ") held the subsequent hearing on August 22, 2016. Plaintiff appeared with an attorney. Plaintiff and a vocational expert ("VE") testified at the hearing. On October 25, 2016, the ALJ issued a partially favorable decision: she found Plaintiff was not disabled from December 13, 2012 through July 21, 2015, and that he became disabled as of July 22, 2015. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On January 4, 2018, the Appeals Council denied review, making the ALJ's October 2016 decision the final determination of the Commissioner. This action followed.

Plaintiff has a high school education and can communicate in English. (R. 25). He was fifty-two years old on the date his SSI application was filed. Plaintiff has past work experience

as a truck driver. (R. 24). Plaintiff's complete medical history is set forth in the Joint Stipulation of Facts filed by the parties. [Doc. # 23-2]. The Court adopts this stipulation and incorporates it by reference herein.

### 2. The ALJ's Decision

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 416.920(a)(4)(i)-(v). The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

In this case, at Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the SSI application date. (R. 17). At Step Two, the ALJ found Plaintiff's hepatitis, cirrhosis, degenerative disc disease, and obesity are severe impairments. (*Id.*). At Step

Three, the ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). Next, the ALJ determined Plaintiff retains the following residual functional capacity[2]:

> Plaintiff can perform light work except he can frequently climb ramps and stairs and never climb ladders, ropes, or scaffolds. He can work in a setting free of concentrated exposure to unprotected heights or moving machinery. He can frequently balance and occasionally crouch, kneel, and crawl. He can work in a setting where he is permitted to change positions one or two times per hour to stretch for one to two minutes.

(R. 18). At Step Four, the ALJ found Plaintiff has been unable to perform any past relevant work since the alleged onset date. (R. 24-25). At Step Five, the ALJ relied on the testimony of the VE to conclude that, prior to July 22, 2015, there were jobs existing in significant numbers in the national economy Plaintiff could perform. (R. 25). Specifically, the VE testified that a person with Plaintiff's vocational factors and the assessed RFC could have performed the positions of final inspector, small products inspector, and mail clerk. (R. 26). The ALJ also found that, beginning on July 22, 2015, the date Plaintiff's age category changed to an individual of advanced age, a finding of disabled is reached by direct application of Medical-Vocational Rule 202.06. (*Id.*). Accordingly, the ALJ found Plaintiff to be disabled as of July 22, 2015, but not before.

## **DISCUSSION**

On appeal, Plaintiff avers that the ALJ should have found him disabled as of his alleged onset date, December 13, 2012. In support of this position, Plaintiff argues (1) the ALJ erred in weighing the medical opinion evidence; (2) the ALJ erred in assessing his credibility; and (3) the

---

[2] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 416.945(a)(1).

5

ALJ failed to consider the combination of his impairments in determining his RFC. The Court will address these points in turn.

### 1. Weighing of Opinion Evidence

Plaintiff first claims that the ALJ erred in her weighing of the medical opinion evidence. The ALJ must evaluate medical opinions, along with the other evidence of record, when determining a claimant's RFC. When evaluating opinion evidence, a treating source's opinion on the nature or severity of a claimant's impairments should be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. § 416.927(c)(2). When a treating physician's opinion is not given controlling weight, the ALJ must consider several factors in determining how much weight it should receive. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Those factors include "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). After considering these factors, the ALJ is required to "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight assigned. *Burgess*, 537 F.3d at 129. An ALJ's failure to provide good reasons for the weight given to a treating source's opinion is grounds for remand. *Halloran*, 362 F.3d at 33. An ALJ is not required to "slavish[ly] recite[]each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

6

Opinion evidence can come from several types of sources, including from "acceptable medical sources," such as treating physicians, and from "other medical sources" such as nurses and nurse practitioners. *See* 20 C.F.R. § 416.913. When considering opinions from "other medical sources," the ALJ should use the same factors as those for evaluating the opinion of a treating physician. 20 C.F.R. § 416.927(f)(1). The ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." 20 C.F.R. § 416.927(f)(2).

Opinion evidence can also come from state agency medical consultants who review a claimant's medical file but do not treat or examine the claimant. *See* 20 C.F.R. § 416.927(e). These consultants are "experts in the Social Security disability programs," and ALJs must "consider their findings of fact about the nature and severity of an individual's impairment(s)." *Titles II & XVI: Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants & Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council*, SSR 96-6P (S.S.A. July 2, 1996). Opinions from state agency medical consultants can be given weight when they are supported by evidence in the record. *Id.* In fact, the opinion of a state agency medical consultant can override the opinion of a treating source when it is supported by the medical evidence. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995); *see also Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (an ALJ can find a non-examining source's opinion "more reliable" than an opinion of a treating source).

The record in this case contains opinion evidence from these three types of sources. First, Dr. Aulepp, Nurse Weyant, and Nurse Conn, Plaintiff's treatment providers when he was in Bureau of Prisons custody (the "BOP providers"), on three occasions in 2011 restricted him to

7

lifting no more than fifteen pounds and no ladders or upper bunks. (R. 629-30, 639, 689). The ALJ gave these assessments little weight, reasoning that they were made more than a year prior to the alleged disability onset date and were inconsistent with objective clinical findings. (R. 22).

The Court finds no error with the ALJ's weighing of the opinions from the BOP providers. The restrictions the BOP providers imposed were well outside of the relevant period, which detracts from their relevance. *See Harris v. Colvin*, No. 2:14-CV-65-JMC, 2015 WL 282014, at *6 (D. Vt. Jan. 22, 2015) (that an opinion was rendered outside of the relevant time period is "a proper factor for the ALJ to consider"). In addition, the ALJ considered these opinions in the context of the record as a whole, and provided good reasons for discounting them in that context. The ALJ specifically details the objective clinical findings inconsistent with the restrictions from the time Plaintiff was incarcerated. These findings include Plaintiff having steady gait and no problems ambulating (R. 416), full range of motion and no tenderness, swelling, or muscle spasm (R. 424, 675), normal gait (R. 425), and full strength and range of motion in arms and legs (R. 676). In addition, an August 2011 imaging study revealed only degenerative changes in the cervical spine, and a May 7, 2012 lumbar x-ray showed mild degenerative disc disease. (R. 659, 810). The ALJ also discusses treatment records from after Plaintiff's period of incarceration. Specifically, the ALJ's decision cites and refers to treatment notes showing Plaintiff presenting in no acute distress (R. 507, 511, 577, 718, 729, 755, 859, 866, 993); having normal strength (R. 737, 859, 870, 877, 889); exhibiting no back tenderness upon examination (R. 738, 743, 748, 993); and having normal range of motion (R. 745). In addition, the ALJ's decision relies on treatment notes from Plaintiff's long-time health care provider, Nurse Kurey, whom Plaintiff saw for chronic pain. Nurse Kurey's notes indicate that

Plaintiff's reported daily activities increased significantly once he began taking opiate medication. For example, Plaintiff remained active completing household chores and outdoor activities including yardwork. (R. 847, 853, 857, 864, 875, 903, 976). He was also able to go boating and fishing. (R. 879, 887, 736). Thus, Plaintiff's claim that the ALJ did not consider all of the evidence in the record in evaluating the opinions of the BOP providers cannot prevail. *See Decker v. Astrue*, No. 11 CIV. 5593(PGG)(GWG), 2013 WL 4804197, at *5 (S.D.N.Y. Sept. 9, 2013) (advising that an ALJ's decision should be "read as a whole" when addressing a claim of error). Since the evidence described above is inconsistent with, and does not support, the opinions of the BOP providers, the ALJ was justified in discounting the fifteen-pound lifting limitation.

Next, the medical providers Plaintiff saw for chronic pain, Dr. O'Keefe and Nurse Kurey, submitted several medical source statements.

In January 2014, Nurse Kurey completed a physical medical source statement in which she listed Plaintiff's diagnoses as chronic pain, neck pain, and low back pain with a fair prognosis. (R. 750). She identified the clinical findings and objective signs of these condition as Plaintiff walking with a limp, being unable to flex fully at the lumbar spine, having decreased range of motion in his neck, and having pain upon palpitation. (*Id.*). She opined Plaintiff could sit for one hour and twenty minutes at a time and stand for one hour and ten minutes at a time, and would need a job that permits shifting positions at will. (R. 751). Nurse Kurey stated Plaintiff must walk for five minutes every hour during an eight-hour workday. (*Id.*). She opined that Plaintiff would need to take two or three fifteen-minute breaks during a work day due to fatigue, pain, and adverse effects of medication. (*Id.*). She said Plaintiff could never lift more than twenty pounds, rarely lift ten pounds, and occasionally lift less than ten pounds. (R. 752).

She said Plaintiff would be off task twenty-five percent or more of the workday, and that he was capable of low stress work. (R. 753).

In July 2016, Nurse Kurey and Dr. O'Keefe completed a physical medical source statement in which they diagnosed Plaintiff with lumbar radiculopathy and neck pain, with a poor prognosis. (R. 984). They stated he had decreased lumbar and cervical range of motion and weakness. (*Id.*). They found Plaintiff could sit for thirty minutes at a time, stand for ten minutes at a time, and sit for two hours and stand or walk for less than two hours total in an eight-hour workday. (R. 985). Nurse Kurey and Dr. O'Keefe stated Plaintiff needed a job that permits shifting position at will, would need to walk for five minutes every hour, and would need two-to-four ten-to-fifteen-minute unscheduled breaks during a work day due to his pain and adverse effects of medication. (*Id.*). They opined Plaintiff could rarely lift ten pounds and never lift twenty pounds. (R. 986). They said Plaintiff would be off task twenty-five percent or more of the workday. (R. 987).

Nurse Kurey also submitted a narrative statement on August 12, 2016, in which she opined that Plaintiff was unable to work due to chronic pain, and would not be able to sustain full-time or even part-time employment. (R. 989). She noted that Plaintiff has increased function and mobility with use of opiate medications, and without the medications he would be unable to function. (*Id.*).

The ALJ attributed all three of these opinion to Nurse Kurey and gave them little weight. (R. 23). She reasoned that Nurse Kurey was not an acceptable medical source and that the degree of limitation the opinions describe is inconsistent with clinical observations of other treatment providers and Plaintiff's reported activities of daily living in Nurse Kurey's notes.

Plaintiff initially argues that the ALJ erred in attributing these positions only to Nurse Kurey. He posits that the medical source statement from January 2014 was co-signed by Dr. Kober. There is a marking on the form that could be another signature, but it is not clear, if it is, from whom. Thus, the Court will not go as far as to declare that an unclear notation on the form is the signature of Dr. Kober. The ALJ did err, however, in attributing the July 2016 opinion to only Nurse Kurey, as that form was clearly co-signed by Dr. O'Keefe. Any attribution errors are harmless in this case, though, because the ALJ still applied the relevant factors for weighing opinion evidence, regardless of whether the opinion came from an acceptable or other medical source. And, the ALJ provided sufficient justification for discounting these opinions. As discussed above, clinical findings are inconsistent with the degree of limitation to which Nurse Kurey and Dr. O'Keefe opine. In particular, their opinions are not supported by Nurse Kurey's own treatment notes (discussed above) documenting Plaintiff's relatively significant activities of daily living. When a treating source's opinion is inconsistent with a claimant's reported daily activities, an ALJ may decline to give it controlling weight. *See Fox v. Colvin*, 589 F. App'x 35, 36 (2d Cir. 2015). Likewise, an opinion may be discounted when it is inconsistent with the source's examination findings. *See Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018).

The opinions of Nurse Kurey and Dr. Koger are also inconsistent with treatment notes from Dr. Kober who, in contrast to Nurse Kurey's findings of abnormal gait, consistently noted Plaintiff's gait to be normal. (R. 755, 862, 866, 873, 883, 907). Dr. Kober's examination notes also indicate Plaintiff's medication was working well for controlling his pain and was effective in managing his chronic lower back pain. (R. 728, 882).

Plaintiff also argues that the ALJ failed to follow the regulations and instead created her own legal standard for evaluating opinion evidence. The ALJ stated that Nurse Kurey's and Dr. O'Keefe's opinions failed to "provide a persuasive rationale supported by compelling evidence" to justify the limitations to which they opined. (R. 23). The Court finds that, despite this language, the ALJ's decision does appropriately consider the factors provided in 20 C.F.R. § 416.927. In all, the Court finds that the ALJ did not err in giving little weight to these opinions.

Finally, two state agency medical consultants provided medical opinions based on their review of the record. At the initial level, Dr. Bernstein opined Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for a total of six hours in a workday, and sit for a total of six hours in a workday. (R. 149). He stated Plaintiff could frequently climb ramps and stairs, frequently balance, and occasionally climb ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl. (R. 150). At the reconsideration level, Dr. Honeychurch agreed with the findings of Dr. Bernstein. (R. 159-60). The ALJ gave these opinions great weight, reasoning that they were supported by specific evidence. (R. 24). The ALJ also noted that although there was additional evidence submitted after the consultants' review, that evidence did not contradict their findings. (*Id.*).

The Court finds no error with the ALJ's decision to give great weight to the opinions of Drs. Bernstein and Honeychurch. When, as here, an opinion of a non-examining state agency medical consultant is consistent with substantial evidence in the record, it can be afforded controlling weight. *See Cyr v. Astrue*, No. 3:10-cv-1032(CFD)(TPS), 2011 WL 3652493, at *11 (D. Conn. Aug. 19, 2011). Based on the objective medical evidence discussed above, the ALJ was justified in relying on the opinions of Drs. Bernstein and Honeychurch.

In all, the Court finds that the ALJ did not err in her evaluation of the opinion evidence; the weight provided to Plaintiff's treatment providers is supported by substantial evidence and the reasoning behind that weight is explained thoroughly.

### 2. Credibility Assessment

Second, Plaintiff argues that the ALJ's credibility assessment is flawed. Specifically, he claims that the ALJ failed to evaluate the type, dosage, effectiveness, and side effects of his medication and treatment, and she improperly rejected his testimony as to the severity of his impairments.

In evaluating a claimant's credibility, the ALJ is required to take into account the claimant's reports of pain and other limitations. 20 C.F.R. § 416.929. The ALJ is not, however, required to accept the claimant's subjective complaints without question. *Taylor v. Astrue,* No. 3:09-cv-1049(MRK)(WIG), 2010 WL 7865031, at *9 (D. Conn. Aug. 31, 2010). Instead, the ALJ must weigh the credibility of the claimant's complaints in light of the other evidence of record. The regulations set forth a two-step process for this evaluation. First, the ALJ must determine whether the claimant suffers from "a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013). If so, the ALJ must next "'evaluate the intensity and persistence of [the claimant's] symptoms' to determine the extent to which the symptoms limit the claimant's capacity for work." *Id.* (citing 20 C.F.R. § 416.929(c)). In doing so, the ALJ considers "all of the available evidence" from medical and nonmedical sources, including objective medical evidence, but will not reject a claimant's subjective assessment of the intensity and persistence of his pain "solely because the available objective medical evidence does not substantiate the claimant's statements." *Id.* (citing 20 C.F.R. § 416.929(c)(2)). If a claimant's testimony about

13

his symptoms is not fully supported by objective medical evidence, the ALJ must "make a finding on the credibility of the [claimant's] statements." *Id.* at 76. In so doing, the ALJ will consider "(1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *Mason v. Comm'r of Soc. Sec.*, No. 3:17-CV-1308(MPS), 2018 WL 6680921, at *5 (D. Conn. Dec. 19, 2018) (citation omitted). "The ALJ's decision 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight.'" *Cichocki*, 534 F. App'x at 76 (quoting Social Security Ruling 96–7p, 1996 WL 374186, at *2). In making a credibility assessment, the ALJ must provide more than a "single, conclusory statement that the claimant is not credible or simply to recite the relevant factors," but "remand is not required where the evidence of record permits [the court] to glean the rationale of an ALJ's decision." *Id.* (citation omitted). The court should not "second-guess the credibility finding in [a] case where the ALJ identified specific record-based reasons for [the] ruling." *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010).

The Court finds that the ALJ properly evaluated Plaintiff's credibility. First, she adequately considered the type, dosage, effectiveness, and side effects of Plaintiff's medication and treatment. The treatment notes upon which the ALJ relies – particularly those of Nurse Kurey and Dr. Kober – document Plaintiff's ability to function when he was taking his medication. It was not unreasonable for the ALJ to find that these reports were inconsistent with Plaintiff's allegations. In *Roe v. Colvin*, No. 1:13-CV-1065(GLS), 2015 WL 729684, at *6

14

(N.D.N.Y. Feb. 19, 2015), the court upheld and ALJ's finding that claimant's pain "was not so severe as to be disabling" when the record contained evidence that, overall, the claimant's pain was controlled with medication, despite some breakthrough pain, limited side effects of the pain medications, and some limitations in the upper extremity remained.

Further, the ALJ provided specific reasons for her credibility determination, including that Plaintiff's subjective complaints were unsupported by his reported activities of daily living or the objective medical evidence. Plaintiff posits that the ALJ overexaggerated his activities of daily living in assessing his credibility. The Court's review of the record, however, reveals evidence of Plaintiff's daily activities consistent with what the ALJ's decision described. And, it is beyond cavil that activities of daily living are an appropriate factor for an ALJ to consider when assessing a claimant's credibility. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (evidence that claimant was able to provide child care, sometimes vacuum and wash dishes, occasionally drive, watch television, read, and use the computer supported the ALJ's adverse credibility finding); *Coger*, 335 F. Supp. 3d at 436 (explaining that the law is "clear" that activities of daily living are proper for an ALJ to consider when making a credibility determination); *Carter v. Comm'r of Soc. Sec.*, No. 514-CV-1315(GTS)(WBC), 2015 WL 8029511, at *6 (N.D.N.Y. Nov. 12, 2015), *report and recommendation adopted sub nom. Carter v. Colvin*, No. 514-CV-1315(GTS)(WBC), 2015 WL 8180368 (N.D.N.Y. Dec. 7, 2015) (an ALJ can properly rely on activities of daily living as one factor in the credibility analysis).

Furthermore, it is the function of the Commissioner, and not the reviewing court, to appraise the claimant's credibility. *See Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). "Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Dir., Office of*

15

*Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (citing *Lennon v. Waterfront Transport,* 20 F.3d 658, 661 (5th Cir.1994)). When, as here, the ALJ lays out specific reasons for finding a claimant not entirely credible, the "credibility determination is generally entitled to deference." *Selian*, 708 F.3d at 420.

### 3. Combination of Impairments

Finally, Plaintiff argues that the ALJ did not consider the combination of his impairments in determining his RFC. Specifically, he claims the ALJ failed to incorporate limitations to account for fatigue caused by his cirrhosis and obesity.

"It is well-settled that the ALJ must consider all of [a claimant's] impairments individually, and in combination, even if an impairment, when considered separately, would not be of sufficient severity to serve as a basis for eligibility for disability benefits." *Gallegos v. Colvin*, No. 3:13-CV-393 JBA, 2014 WL 4635418, at *20 (D. Conn. Sept. 11, 2014). In formulating an RFC, it is necessary to evaluate a claimant's impairments in combination, "since RFC is whatever ability one retains after the effects of *all* impairments (exertional and non-exertional; environmental and non-environmental; severe and non-severe) have been considered." *Echevarria v. Astrue*, No. 3:08-CV-01396(VLB), 2010 WL 21190, at *2 (D. Conn. Jan. 5, 2010).

Here, the ALJ explicitly acknowledged the requirement to consider all of Plaintiff's impairments. *See* R. 18 ("the Undersigned has considered all symptoms," and the "combined effect of these medically determinable impairments."). The ALJ considered Plaintiff's obesity, in combination with his other impairments, and reduced the RFC accordingly. (R. 19). In addition, "[t]he ALJ's review of plaintiff's medical records demonstrates that [s]he assessed an RFC that was based upon the combination of all of plaintiff's impairments." *See Whitley v. Colvin*, No. 3:17-CV-00121(SALM), 2018 WL 1026849, at 9-10 (D. Conn. Feb. 23, 2018)

(finding no error when the ALJ explicitly acknowledged the requirement to consider all impairments, and the decision indicated the ALJ properly reviewed the medical records in formulating the RFC); *Gallegos*, 2014 WL 4635418, at *20 (same). Accordingly, the ALJ did not fail to consider Plaintiff's impairments in combination when determining his RFC.

## **Conclusion**

After a thorough review of the record and consideration of all of the arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that her opinion is supported by substantial evidence. Accordingly, the Court grants Defendant's Motion to Affirm the Decision of the Commissioner [Doc. # 26] and denies Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. # 23].

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk is directed to enter judgment in favor of the defendant and close this case.

SO ORDERED, this __8th__ day of March, 2019, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge